IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MICHAEL SNELLING, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | 1:16-CV-00130-CC-AJB |
| v. | ) | |
| | ) | |
| OFFICER STROY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT OFFICER ROBERT STROY'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Michael Snelling contends that his civil rights were violated when Officer Robert Stroy failed to prevent Snelling from being attacked by another jail inmate who Officer Stroy allegedly knew wanted to harm Snelling. However, Snelling's claim must fail because Officer Stroy was not aware of facts from which the inference could be drawn that a serious risk of harm existed nor did he draw said inference. How then can Snelling's claim for deliberate indifference to a serious risk of harm survive? In short, it cannot, which is why pursuant to Fed. R. Civ. P. 56 and L.R. 56.1 of the United States District Court for the Northern District of Georgia, Officer Stroy files this Brief in Support of his Motion for Summary Judgment.

## STATEMENTS OF FACTS

On December 22, 2015, then Fulton County inmate Michael Snelling ("Plaintiff") was outside his cell for recreation in an "administrati[ve] lockdown zone" where physical interaction between inmates is prohibited. [Doc. 5 at 4]. At the same time, Officer Stroy ("Defendant") was escorting another inmate, Nyron Thomas, through the zone after Thomas's return from a court appearance. [Id. at 3, 4; Stroy Aff., ¶ 3]. Upon escorting Thomas through cell block 7ST-600, Defendant removed the handcuff restraints while guiding Thomas up the stairs to his cell. [Stroy Aff., ¶ 4]. Thomas quickly diverted from Defendant's grasp and ran towards Plaintiff, who was at the kiosk machine. [Doc. 5 at 3; Stroy Aff., ¶ 6]. Thomas struck Plaintiff with a closed fist and cut him above his right eye. [Doc. 5 at 3; Stroy Aff., ¶ 6]. Defendant immediately subdued Thomas, and after calling other detention officers to assist, began providing medical assistance to Plaintiff. [Stroy Aff., ¶ 7; Snelling Dep. 51:18-23]. Defendant was not aware that prior to this incident, Plaintiff and inmate Thomas had been experiencing conflict due to an illegal cell phone that had been smuggled into the Fulton County Jail. [Snelling Dep., 25:20-26:1; Stroy Aff., ¶ 8]. Defendant was not aware that Thomas posed any risk to Plaintiff or any other inmate nor did

2

Plaintiff ever tell Defendant that he felt Thomas was a threat to him. [Stroy Aff., ¶¶ 9, 10].

## CLAIM ALLEGED BY PLAINTIFF

Plaintiff contends that his civil rights were violated when Defendant failed to prevent him from being attacked by Thomas, who Defendant allegedly knew wanted to harm Plaintiff. Plaintiff filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 on January 14, 2016. [Doc. 1]. Plaintiff amended his complaint on March 7, 2016 [Doc. 5] and subsequently filed two supplements to the amended complaint [Docs. 8, 10]. Following a frivolity review, Plaintiff was allowed to proceed on his individual-capacity deliberate indifference claim against Defendant. [Docs. 12, 15]. All of Plaintiff's other claims were dismissed. [Id.].

Even when viewing the evidence in the light most favorable to Plaintiff, Officer Stroy must prevail. Plaintiff cannot prove every essential element of his claim. Moreover, there are no genuine disputes as to any **material** fact, and this Court should grant Defendant's summary judgment motion as a matter of law.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. Pro. 36(a)(3), a party served with requests for admission is deemed to have admitted all relevant

facts as true if he does not respond to the requests for admission in thirty (30) days. See also Popowski v. Parrott, Civil Action No. 1:04-CV-0889-JOF, 2008 WL 4372006, *6 (N.D. Ga, Sept. 19, 2008) (finding that unanswered requests for admission are deemed admitted). When default admissions relate to matters that are dispositive of a case, summary judgment is appropriate. See Riberglass, Inc. v. Techni-Glass Industries, Inc., 811 F.2d 656, 566-67 (11th Cir. 1987) (summary judgment based in default admissions is appropriate); Stubbs v. Comm'r of Internal Revenue Serv., 797 F.2d 936, 938 (11th Cir. 1986) (upholding summary judgment based on failure to respond to requests for admission).

While the Court must view the evidence in the light most favorable to the non-moving party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party moving for summary judgment has the burden of establishing the absence of a genuine issue of material fact." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). If the movant successfully discharges this initial burden, the burden then

shifts to the non-movant to establish that genuine issues of material fact exist by going beyond the mere pleadings. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Brown, 906 F.2d at 670 ("When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories, and admissions must show that there are specific facts demonstrating that there is a genuine issue for trial.").

"Genuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987); see also Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."); Shuler v. Bd. of Trustees of Univ. of Alabama, 480 F. App'x 540, 544 (11th Cir. 2012).

Moreover, when evaluating claims brought by a *pro se*

plaintiff, as we have in this case, the Eleventh Circuit has held, "[a]lthough we must view factual inferences favorably toward the nonmoving party and *pro se* complaints are entitled to a liberal interpretation by the courts, we hold that a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." <u>Brown</u>, 906 F.2d at 670.

<u>**ARGUMENT AND CITATION TO AUTHORITY**</u>

> **I.   Based on Plaintiff's Default Admissions, Defendant Is Entitled to Summary Judgment Because Plaintiff Has Failed To Prove That Defendant Was Deliberately Indifferent To A Substantial Risk of Serious Harm From Inmate Thomas.**

A jail official violates the Fourteenth Amendment only when the following two requirements are met: 1) "the deprivation alleged [is], objectively, 'sufficiently serious'" and 2) the detainee shows that the jail official had a "sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (citations omitted); <u>see also</u> <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996) (explaining that same standard applies to claims by convicted prisoners under Eighth Amendment and claims by pretrial detainees under Fourteenth Amendment). "In [jail]-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." <u>Id.</u>   And

6

while deliberate indifference is something more than mere negligence, "the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. Consequently, in order for a pre-trial detainee to make a successful claim for deliberate inference to a substantial risk of serious harm, the detainee must prove that the jail official knew of and disregarded "an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

"Whether a jail official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id. at 842. "[A] factfinder may conclude that a [jail] official knew of a substantial risk from the very fact that the risk was obvious." Id. However, "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment," nor can they be held liable if, for example, "they did not know of the underlying facts indicating a sufficiently substantial danger and [] they were therefore unaware of a danger." Id. at 844.

Although Plaintiff complains that Defendant "had a job to

do and he did not do the job right," he acknowledges that he "ain't got evidence" that Defendant knew when he removed the handcuffs from inmate Thomas that Thomas would attack Plaintiff. [Snelling Dep. 24:23-24; 30:17-25].  And Defendant denies any knowledge that inmate Thomas posed any risk to Plaintiff. [Stroy Aff., ¶¶ 9, 10].  Further, by not responding to all but one of Defendant's Request for Admissions, Plaintiff has admitted that Defendant was unaware of any risk to Plaintiff's safety.  See Fed. R. Civ. Pro. 36(a)(3) and Defendant Officer Robert Stroy's Motion to Deem First Requests for Admissions of Fact Admitted, filed contemporaneously with Defendant's Motion for Summary Judgment and this brief in support.

Even assuming, *arguendo*, that Defendant was aware of the scuttlebutt surrounding the illegal cell phones in the jail, as Plaintiff claims [Snelling Dep. 29:14-22], "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not....'" Cottrell, 85 F.3d at 1491 (citing Farmer, 511 U.S. at 838).  Even when proven that jail officials knew of the "underlying facts [indicating a sufficiently substantial danger][,] [if they] believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," they are not liable.  Farmer, 511 U.S. at 844.  But this is not the case

8

here.  Just as Plaintiff had no idea that inmate Thomas intended to attack him [Snelling Dep. 25:4-5], neither did Defendant. And though, in hindsight, it may have been unwise for Defendant to remove the handcuffs from Thomas, "deliberate indifference entails something more than mere negligence."  Farmer, 511 U.S. at 835.

In  Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003), the Court found that the Plaintiff, inmate John Carter, failed to establish that either the Deputy Warden of Security at Hays State Prison or the Special Management Unit Manager of the prison had a subjective awareness of a substantial risk of serious physical threat to Plaintiff.  The facts showed that Carter's prison roommate assaulted him after Carter informed the Defendants that his roommate "was acting crazy and planned on faking a hanging."  Carter, 352 F.3d at 1348.  Carter also told the Defendants that despite his refusal, his roommate had advised him that he would help in the faked hanging "one way or another," which Carter interpreted as a verbal threat.  Id.

Although the Court found that Defendants arguably should have moved Carter, it did not find that the statement that Carter would help with the faked hanging "one way or another" provided a "sufficient basis to make the inferential leap that a substantial risk of serious harm to [Carter] existed."  Id. Just

as here, Carter never contended to the Defendants that he felt threatened by his roommate, and even though Carter's roommate was a problematic inmate (just like Thomas), "to find [Officer Stroy] culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court." Id.

Plaintiff has simply failed to prove that Defendant was deliberately indifferent to the substantial risk of serious harm inflicted upon Plaintiff. Accordingly, Defendant is entitled to summary judgment as a matter of law.

## II. Plaintiff's Deliberate Indifference Claim Against Defendant In His Individual Capacity Must Fail Because Defendant Is Entitled to Qualified Immunity.

So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law of which a reasonable person should have known, the doctrine of qualified immunity protects him. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Purcell Ex Rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1319 (11th Cir. 2005). Qualified immunity provides immunity from suit, not just immunity from liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of

10

personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To receive qualified immunity, a defendant must first show that he was engaged in the performance of a discretionary function. <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1156 (11th Cir. 2005). Discretionary authority is defined as "all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties," and (2) were 'within the scope of his authority.'" <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting <u>Rich v. Dollar</u>, 841 F.2d 1558, 1564 (11th Cir. 1988)). Once a defendant shows that he was engaged in discretionary conduct, the burden shifts to Plaintiff to show that qualified immunity is not appropriate. <u>Mercado</u>, 407 F.3d at 1156.

A court will grant qualified immunity to the government official unless the plaintiff can show "that the facts when viewed in the light most favorable to the plaintiff establish a constitutional violation" and "that the illegality of the [government official's] actions was

11

'clearly established' at the time of the incident."
Muhammad v. Sapp, 388 F. App'x. 892, 897-98 (11th Cir.
2010) (citations omitted).  A plaintiff seeking to overcome
the defense of qualified immunity must first establish the
violation of a constitutional right.  Saucier v. Katz, 533
U.S. 194, 201 (2001).  Then, he must be able to demonstrate
that the right was so clearly established at the time of
the alleged violation that a reasonable public official in
a similar situation would be aware that his conduct was
unconstitutional.[1]  Id.; Siegert v.Gilley, 500 U.S. 226, 232
(1991).  This is a "purely legal question."  Id.

Qualified immunity may be defeated only by pointing to
judicial decisions of the United States Supreme Court, the
Eleventh Circuit, and the Georgia Supreme Court that
clearly establish the law.  Griffin Indus. Inc. v. Irvin,
496 F.3d 1189, 1200 n.9 (11th Cir. 2007).  Further, the
contours of the right violated must be sufficiently clear
such that a reasonable official would understand that what

---

[1] After Pearson v. Callahan, 555 U.S. 223 (2009), the court is
no longer required to conduct the qualified immunity analysis
in the sequence specified in Saucier v. Katz, 533 U.S. 194
(2001).  See Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir.
2009).  Instead, the court may now exercise its sound
discretion to decide which prong of the inquiry to address
first.  See Pearson, 555 U.S. at 236.

he is doing violates that right.  United States v. Lanier, 520 U.S. 259, 270 (1997).  In the qualified immunity analysis, the relevant question to be answered is whether a "reasonable official" would have believed the defendant's actions to be lawful in light of clearly established law and the information possessed by the defendant.  Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Here, Defendant was escorting inmate Thomas to his cell, pursuant to his duties as a detention officer.  As he was doing so, a heated argument amongst the inmates in another zone captured Defendant's attention.  [Stroy Aff., ¶ 4].  Therefore, once reaching the administrative lockdown zone, Defendant removed Thomas's restraints as he was climbing the stairs to his cell to facilitate Defendant's quick transition from the administrative lockdown zone back to the other zone where he was needed.  Id.  Defendant, however, intended to supervise Thomas as he navigated the stairs until he was secured back in his cell.  Id.

Defendant was acting within the scope of his discretionary authority when he prioritized the escalating incident in another zone over what he believed would be a routine escort of an inmate back to his cell.  And regardless of any policy, Plaintiff has asserted no

evidence that could establish that Defendant acted with deliberate indifference towards him when Defendant exercised this discretion. In analyzing a motion for summary judgment, the Court must look beyond the mere allegations in the pleadings, but rather to evidence in the record in the form of depositions, affidavits, admissions, and interrogatories. Here, there simply is no evidence to support Plaintiff's claim. Further, based upon Plaintiff's default admissions, he admits that Defendant was entirely unaware of the underlying facts that led to the attack [Def. RFA #1-3 and 6-7 to Pl.], and Defendant's sworn testimony corroborates this fact. [Stroy Aff., ¶ 8]. Accordingly, Defendant is entitled to qualified immunity as to the deliberate indifference claim against him as a matter of law.

<u>**CONCLUSION**</u>

Accordingly, for the reasons stated above, Defendant's motion for summary judgment should be GRANTED.

Respectfully submitted, this 12th day of July, 2017.

**OFFICE OF THE FULTON COUNTY ATTORNEY**

Patrise Perkins-Hooker
County Attorney
Georgia Bar No. 572358

14

Kaye Woodard Burwell
Deputy County Attorney
Georgia Bar No. 775060

**_/s/ Ashley J. Palmer_**
Ashley J. Palmer
Senior Assistant County Attorney
Georgia Bar No. 603514

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MICHAEL SNELLING, | ) | |
| | ) | |
|     Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | 1:16-CV-00130-CC-AJB |
| v. | ) | |
| | ) | |
| OFFICER STROY, | ) | |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

THIS CERTIFIES that on July 12, 2017, I presented this document in Courier New, 12 point type in accordance with LR 5.1(C), and that I electronically filed the foregoing **DEFENDANT OFFICER ROBERT STROY'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system and deposited the same in the United States Mail with adequate postage affixed thereto, and addressed as follows:

Michael Snelling
GDC# 1099143
Baldwin State Prison
P.O. Box 218
Hardwick, Georgia 31034

This 12th day of July, 2017.

<u>*/s/ Ashley J. Palmer*</u>
Ashley J. Palmer
Georgia Bar No. 603514

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W.

16

Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)